PARKER v. WRAY *et al.*, County Court Judges.

*(Circuit Court, W. D. Missouri, W. D.* April 4, 1891.)

CONTRACTS—MUNICIPAL BONDS—SPECIFIC PERFORMANCE.

Where the complainant entered into a contract with defendant county by which he was to secure the surrender to defendant of certain old bonds and coupons issued by certain townships in aid of a railroad, and to satisfy all outstanding judgments on such bonds and coupons and to hold the townships harmless against such indebtedness, and was to receive therefor $150,000 in new bonds, complainant's undertaking extends only to obligations of the townships themselves, and does not include judgments rendered on bonds issued by the county without authority of law to take up overdue interest coupons on such township bonds.

In Equity.

This is a bill for specific performance of contract entered into between the complainant and the respondent county, of date September 7, 1887. The substance of this contract is as follows: That the respondent county court should issue and deliver to complainant 150 bonds, of the denomination of $1,000 each, amounting in all to $150,000, payable 30 years after date, redeemable at the option of the payor at the end of 20 years, to bear interest at the rate of 5 per cent. per annum, evidenced by coupons, etc., payable annually at a given bank in the city of New York, said bonds to bear date November 1, 1887; in consideration of which the complainant agreed on his part to surrender and deliver to the respondents $150,000 in old bonds and coupons and interest thereon, and as much more as he may have on hand, (such bonds, etc., being originally issued by said county on behalf of Grand River township in said county, to aid in the construction of certain railroads;) and should also cause to be entered satisfaction of judgments rendered against said township on said bonds and interest, on the records of the courts where such judgments may be entered; the respondents to deliver such new bonds, and make the exchange on a basis of 60 cents in new bonds for every one dollar in old bonds, coupons, judgments, and accrued interest thereon, which complainant might surrender to respondents; and the respondents agreed to make further exchange upon the above basis whenever the complainant should present any of the above-described old bonds and coupons, or present evidence of having satisfied judgments on the same. Should the complainant be unable to so deliver and surrender all of said bonds and coupons, and cause all judgments against said township to be satisfied by January 1, 1888, then the complainant was to surrender and deliver to respondent county a sufficient amount of said indebtedness to

reduce the same to the lowest possible figure; and the respondents were to retain in their possession a sufficient amount of said new bonds to amount to $110 for every $100 of old indebtedness for which said township is liable, and deliver the remaining new bonds, if any, in their hands to the complainant. "It is understood that the bonds, coupons, and judgments heretofore mentioned consist of the outstanding and unpaid original bonds and coupons issued by the county court for and on behalf of said Grand River township to aid in the construction of certain railroads, but does not include the funding bonds issued under chapter 83 of the Revised Statutes of 1879." The contract then provides for the respondent's continuing to make resistance as theretofore to the payment of said indebtedness at the cost of the complainant, with a further stipulation for paying complainant out of said $150,000 certain costs. The complainant further stipulated, in consideration of the premises, to pay all the accrued costs for which said township is liable by reason of the institution of any suit to obtain judgments on any of said bonds, etc., as well as all costs which may hereafter accrue in any suits against said township instituted upon any of said old bonds and coupons, and costs of *mandamus* proceedings, etc., and to release all judgments, either heretofore rendered, or any that may hereafter be obtained, against said township, on any of said old bonds or coupons, and have satisfaction of record duly entered thereof. "The true intent of this contract is that for the 150 bonds of the denomination of $1,000 each, delivered to said party of the first part, (the complainant,) he, the said party of the first part, will protect and hold harmless the township of Grand River, in Cass county, Mo., against all of their old railroad indebtedness, which originally consisted of bonds and coupons, and protect said township against all judgments rendered thereon, and against all costs accruing in any suits or proceedings instituted on any such bonds, for which said township is now or may hereafter be liable. It is further agreed that said party of the first part shall use due diligence in securing and surrendering to said party of the second part all the bonds, coupons, or judgments on same, of the old indebtedness of said Grand River township; but should said party of the first part fail to secure all of said indebtedness by the 2d day of October, 1893, then if no suits be pending against said party of the second part for the collection of any of said old bonds and coupons, and no unsatisfied judgments existing against said second party, the said second party shall deliver over to said first party all the remaining new funding bonds remaining in their hands, said old bonds and coupons being by that time outlawed and valueless. The contract to be null and void unless ratified by the qualified voters," etc. There is a like contract respecting the indebtedness of Camp Branch township, with the exception of the proportion of new bonds to the old bonds or indebtedness to be exchanged. After the execution of these contracts the county court duly submitted the matter of ratification to the qualified voters of said townships, who duly approved the same. The new funding bonds were duly prepared and executed by the county court, and the complainant proceeded to take up, and presented for surrender, all the outstand-

ing indebtedness of said. Grand River township as he claims, with the exception of about $3,300 in amount, and all of the indebtedness of Camp Branch township. The respondents have delivered to complainant $115,000 in new bonds on account of Grand River township, and also withhold part of the new bonds on account of Camp Branch township. The bill asks that respondents be required to fully perform said contracts, with the exception of the said amount of the outstanding claims against said Grand River township. The substance of respondents' resistance to this action is predicated of the following state of facts: In October, 1871, after said township bonds had been issued and sold, the county court made an order reciting that certain of the coupons on said bonds were past due and unpaid, and that for the purpose of maintaining the credit of the county it ordered that there be issued county funding bonds, for the benefit of Camp Branch township, in the denomination of $500 each, to the amount of $8,000, with coupons, and like bonds with coupons, for the benefit of Grand River township, to the amount of $14,000, for the payment of the said past-due coupons of interest. Said bonds purported on their face to be obligations of the county, and not those of the townships. These bonds were placed upon the market, and purchased by innocent, *bona fide* parties. On their maturity suits were instituted thereon in the United States circuit court for this district at Jefferson City. It was found by the court, on the evidence before it, that said bonds were so issued by said county court for and on account of said townships to pay interest on their indebtedness; that the county court had no right to thus saddle upon the county at large the debts which of right and law pertained alone to the respective townships. But as the bonds on their face purported to be the obligations of the county, and were funding bonds which the county might under certain circumstances by law issue, and the same were purchased in market overt, without any notice to the purchaser of their real consideration, judgment went against the county therefor in 1874. These judgments have never been satisfied by the county, or any one for it. It is claimed by respondents that these judgments are within the terms of the contract with complainant, and that until the same are satisfied by him he is not entitled to the delivery of the amount of such new bonds as represents the proportion of said judgments.

*Wm. S. Shuk*, for complainant.

*Wm. L. Jarrott, James T. Burney*, and *J. F. Lynn*, for respondents.

PHILIPS, J., (*after stating the facts as above.*) The single question on the foregoing state of facts to be determined is whether or not the judgments against Cass county on account of the funding bonds issued by it to pay interest on the township bonds come within the purview of the contract between complainant and the county court. Each of the parties has taken depositions as to certain conversations had between them prior and up to the time of the execution of the contract, and other matters *in pais*, for the purpose of showing what their respective understandings were as to the scope and extent of the contract. It appears that at the time the

contract was entered into the county justices did not know of the consideration of the bonds on which judgments had been taken 13 years before against the county. As there is no latent ambiguity in the terms of the contract, and the whole contract between the parties was reduced to writing and formally executed and delivered, it is presumed, as a matter of law, to contain the whole agreement between the parties. And I discover nothing whatever to take it out of the operation of the well-recognized rule of law that all anterior negotiations and understandings between the parties are presumed to be merged in the written contract, and that nothing can be taken from or added to its express terms, nor can they be varied or modified, by parol evidence. The answer is not framed so as to present any issue of fraud or mistake in the execution of the contract. The county court accepted and spread this contract on its records, as they were required by law to do. It is, therefore, a solemn written compact, and as such it must speak for itself. Looking at this contract in its entire scope and essence, its manifest purpose was to wipe out the old indebtedness of the townships, whether in the form of bonds with coupons, or judgments against them. It was the debts of the townships owing on account of the old bonds originally issued by the county on their behalf, and not for any debt of or claim against the county as such, which was and is the subject-matter of this contract. The specifications of the contract are singularly striking in this respect. It is the "exchange of new bonds  *  *  *  for old bonds, coupons, and judgments on same, (said bonds, etc., being originally issued  *  *  * for and on behalf of said township to aid in the construction of the St. Louis and Sante Fe Railroad." Then again: "In old bonds, coupons and interest thereon, or judgments rendered against said township on said bonds or coupons, or both." Then, in summing up as to what is the purpose of the contract, it is said: "It is understood that the old bonds, coupons, and judgments heretofore mentioned, consist of the outstanding and unpaid bonds and coupons, and judgments on the same, issued by said county for and on behalf of said township to aid in the construction of" said railroad. And again, further on, it recites that "said party of the first part agrees to release all judgments, either heretofore rendered, or that may hereafter be obtained, against said township on any of said bonds or coupons." It winds up with a restatement of the true import of the contract. It is to protect and save harmless the township "against all of the old indebtedness, which consists of bonds and coupons, and against all judgments thereon, and costs;" from which it is most manifest that the bonds to be taken care of by Parker are the old bonds of the townships,—no funded or new bonds; and the judgments to be satisfied by Parker are judgments upon said township bonds, and judgments against the townships, or such judgments as are enforceable, as such, against the townships. As was well known, presumably, to the contracting parties, judgments on township bonds, while they go against the county, are not county debts, and the judgment specifies that the same is to be collected by levies on the taxable property of the township, and it is not enforceable against the body of the county.

The judgment in question was rendered against the county as such, and was declared to be a debt of the county, enforceable as such. It was not, therefore, a judgment against the township, or against the county for and on behalf of the township. The county has no judgment over against the township on account of this judgment against it; nor, indeed, could it, if at all, obtain any judgment until it has paid and satisfied the judgment against it, on account of its assumption for the township. Indeed, I am unaware of any law which would enable the county to maintain an action against one of its township subdivisions on account of a debt voluntarily assumed and paid by the county for the township constituency. It was not only a voluntary payment of a debt not owing by it, without the solicitation of the debtor, but a payment of a debt for a subdivision of the county, where there was no agent or lawful representative of the subdivision to consent thereto, and no power lodged in any one to ratify the act on behalf of the *quasi* municipality. The county court is not authorized by statute to make a levy on the taxable property of the township for such a claim. It is only empowered by statute to make an assessment and levy for and on behalf of the township to pay interest and principal on its bonds issued in aid of railroads, or to enforce the payment of a judgment on such bonds and coupons, when such judgment is against the county for and on behalf of the township. It was the obligations, existing, vital, and enforceable, of the township which the complainant undertook to protect and satisfy, and not the voluntary and unauthorized assumption of obligations of the township by the county. As to the latter the complainant has the right to appeal to his contract and say, *in hoc fœdere non veni.* It cannot be said with legal exactness that it is within the equity of the contract that Parker should save the county of Cass from its liability on the judgments against it on account of its unauthorized assumption of part of the township obligation. For it must be kept in mind that the county of Cass, as such, was not contracting for itself and for its protection. It was acting for and on behalf of the townships, to enable them to get rid of their township debts springing from the subscription to the railroads, and judgments against the townships incident thereto. The contract was made subject to the ratification of the townships, as it was for their benefit and on their responsibility. Any equity, therefore, which could possibly be invoked would be in favor of the township and not the county; and as the county has no claim against the township which it can enforce, what equity has the township against Parker which the county, under this contract, has the right to interpose? The whole power of the county court to make such railroad subscription and issue such bonds on behalf of the township being conferred by the special act of the legislature, (Laws Mo. 1868, p. 92,) we must look to the special enabling act to ascertain the extent of the authority of the county court and the liabilities of the township connected with the making of such subscriptions and the issuing of bonds in payment thereof. No authority is to be found in the statute for the action of the county court in issuing the funding bonds to take up the interest coupons on the township bonds; and, in consequence,

no provision is found by which the county can reimburse itself for such assumption. The *quasi* municipal subdivision of the county known as a township is precisely what the legislature in this respect has made it, possessed of no powers or faculties, and subject to no incidents or liabilities, other than those prescribed in the enabling act. It is not, therefore, perceivable how any court, whether of law or equity, can enforce a claim of the county against the township on account of the bonds voluntarily issued to fund the accrued interest on the townships debts, even should the county ever satisfy the judgment against it. The action of the county court in that transaction was violative of its trust, as the representative of the county; and, whatever may have been or may be the rights of the constituency against the wrongful act of the justices of the court, a court of equity, no more than a court of law, can create out of their wrong a binding obligation against the township. A court of equity cannot make a contract for parties, and then make a law to enforce it. While the granting of a decree of specific performance is said to rest in the discretion of the chancellor, this is a sound judicial discretion, and not one to be arbitrarily exercised or arbitrarily refused. When it is ascertained that the contract is founded on a valuable consideration, its mutual enforcement practicable, and its enforcement *in specie*, as in this case, is necessary, owing to the impracticability, somewhat, of giving to the new bonds a true valuation in money, and the contract is certain, unambiguous, and reasonable, then the remedy ripens into a right. "The remedy of specific performance is governed by the same general principles and rules which control other equitable remedies. The right to it depends upon circumstances, conditions, and incidents, in addition to the existence of a valid contract, which equity regards as essential to the administration of its peculiar modes of relief. When all these circumstances, conditions, and incidents exist, the right is perfect in equity, and a specific performance is granted as a matter of course within the classes of agreements to which the jurisdiction extends." Pom. Spec. Perf. § 38. It results that the complainant is entitled to have the contract enforced without regard to the existence of said judgments against Cass county. Decree accordingly.